IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MITCHELL DUNCAN | ) | |
| | ) | |
| v. | ) | No. 3:20-0600 |
| | ) | Crenshaw/Holmes |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA and THE UNUM GROUP | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Unum Life Insurance Company of America and The Unum Group's motion to strike Plaintiff's request for a jury trial. (Docket No. 34.) Plaintiff Mitchell Duncan has filed a response in opposition to the motion (Docket No. 41), to which Defendants have filed a reply. (Docket No. 42.) Plaintiff has also filed a subsequent sur-reply. (Docket No. 55.) For the reasons that follow, Defendants' motion (Docket No. 34) is GRANTED.

## I. THRESHOLD ISSUE CONCERNING MAGISTRATE JUDGE AUTHORITY

This case has been referred to the undersigned Magistrate Judge to "dispose or recommend disposition of any pretrial motions." (Docket No. 39.) Motions to strike are often characterized as non-dispositive matters and typically are ruled on by order. *Lighthill v. McDaniel*, 2017 WL 2536915, at *1 (M.D. Tenn. June 9, 2017); *see also Oppenheimer v. City of Madeira, Ohio*, 336 F.R.D. 559, 561-61 (S.D. Ohio 2020) (internal citations omitted).[1] The Sixth Circuit has not addressed the issue of whether motions to strike should be uniformly treated as non-dispositive, as

---

[1] Some courts have, however, differentiated motions to strike related to non-dispositive matters from those to strike an entire claim or defense. *See Berry v. City Credit Bureau*, 2020 WL 4596774, at *3 (W.D. Tenn. Aug. 11, 2020) (collecting cases).

dispositive, or as some hybrid of the two. Given the lack of clear guidance, and at least under the present circumstances, the Court concludes that its determination is a non-dispositive one.[2]

## II. BACKGROUND[3]

This matter involves Plaintiff's claim for long-term disability benefits pursuant to a group disability insurance policy issued by Defendant Unum Life Insurance Company ("Unum Life") to Plaintiff's then employer, Cellular Sales of Knoxville, Inc. ("Cellular Sales"). In August 2012, Cellular Sales procured from Unum Life four separate group insurance policies that comprised what is purported to be a group benefits plan offered to employees: (1) Group Life and Accidental Death and Dismemberment ("Basic Life"); (2) Group Lifestyle Protection and Accidental Death and Dismemberment ("Voluntary Life"); (3) Group Short Term Disability ("STD"); and (4) Group Long Term Disability ("LTD"). (Docket No. 36 at 2.)[4] The chief underwriter for Defendant Unum Group, Michael Maceiko, confirmed that Cellular Sales "participated in the selection of the Unum Group products to be included in the benefits plan," which entailed "the types of coverage (i.e. basic and voluntary), the amounts of coverage, and eligibility requirements (i.e. minimum hours worked, employee effective date, waiting periods)." (*Id.*) Under the terms of the group benefits plan, Cellular Sales paid the premiums for Basic Life, while the participating employee paid the premiums for Voluntary Life, STD, and LTD. (*Id.* at 3.)

---

[2] To the extent that the Honorable Waverly D. Crenshaw, Jr., Chief District Judge, may disagree with this conclusion, the undersigned Magistrate Judge respectfully submits this as a report and recommended disposition of the pending motion.

[3] Unless otherwise stated, the facts set forth here are undisputed for purposes of the instant motion and taken from Defendants' brief (Docket No. 35), Plaintiff's state court complaint (Docket No. 1-2), Defendants' notice of removal (Docket No. 1), and the administrative record (Docket No. 33).

[4] Defendants note that the plan also included "vision, dental and healthcare policies" (Docket No. 42 at 1), although these were not part of the package of products offered by Unum Life. (Docket No. 36 at 2.)
2

Plaintiff was hired as a sales representative by Cellular Sales in November 2012, at which time he enrolled in the employer-funded Basic Life policy but declined enrollment in the Voluntary Life, STD, and LTD policies. In June 2014, however, Plaintiff enrolled in the STD and LTD policies, and in March 2015, Plaintiff applied to increase his LTD coverage from $1,000/month to $4,400/month.[5] As part of this application, he completed an Evidence of Insurability form ("EOI") in which he confirmed that he had not "received medical advice or sought treatment for epilepsy, nervous, emotional or mental disorder …" (Docket No. 1-2 at 68.)

Plaintiff stopped working for Cellular Sales in January 2018, then filed a claim for LTD benefits in April 2018 based on recurrent seizures that he alleged began in December 2017. Unum Life approved the application and paid LTD benefits at $1,000/month beginning in May 2018 but declined to approve the requested $4,400/month coverage based on medical records indicating that Plaintiff, in contrast to the representations he made in the March 2015 EOI, had been diagnosed with seizure disorder and bipolar disorder in 2011. Unum Life also discontinued payments in April 2020 based on the LTD policy's 24-month limitation for mental illness-based disabilities. Plaintiff's appeal of these decisions was denied by Unum Life.

Plaintiff challenged Unum Life's denial of benefits by filing a civil complaint in the Circuit Court of Davidson County, Tennessee, in June 2020. The complaint alleged breach of contract and sought a declaratory judgment "that [Plaintiff] is disabled under the terms of the [LTD policy]." (Docket No. 1-2 at ¶ 71.) The complaint further alleged that the LTD policy was not covered under the Employee Retirement Income Security Act ("ERISA") "because [Plaintiff] paid the cost of coverage and the Policy requires the insured pay the cost of coverage." (*Id*. at ¶ 26.)

---

[5] Plaintiff filed another application to increase his LTD coverage to $4,900/month in April 2017.

In July 2020, Defendants filed a Notice of Removal in which they invoked federal subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as well preemption under 29 U.S.C. § 1132(e)(1), which states that state courts and U.S. district courts "shall have concurrent jurisdiction of actions" that seek recovery of benefits under the terms of a plan subject to ERISA. 29 U.S.C. 1001 *et seq*. Defendants contend that the LTD policy is not severable from the other three policies included in the group benefits plan, and that the entire plan is therefore subject to complete preemption under ERISA. Accordingly, Defendants argue that the instant cause of action is covered by the general prohibition of jury trials in appeals from ERISA claim denials. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

Plaintiff maintains, however, that the LTD policy is independent of the group benefits plan and does not constitute an employee welfare plan governed by ERISA, and that a jury trial regarding his entitlement to LTD benefits is therefore permissible. Plaintiff argues that the Court should therefore deny outright Defendants' motion to strike the jury demand or, alternatively, deny the motion without prejudice subject to the completion of discovery in this matter.

### III. LEGAL STANDARDS AND ANALYSIS

The lone question before the Court is whether the LTD policy under which Plaintiff received and now seeks continued benefits is part of an "employee welfare benefit plan" for purposes of ERISA. The existence or nonexistence of an ERISA plan is a question of fact, which must be determined "in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996).

An employee welfare benefit plan falling under ERISA is defined by statute as:

any plan, fund, or program … established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise …

29 U.S.C.A. § 1002(1). This includes "disability" benefits such as those at issue here. *Id*. However, to ascertain whether an ERISA plan in fact exists, a reviewing court is directed to look at the particular nature of the plan to determine whether it "requires an ongoing administrative program to meet the employer's obligation." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 848 (6th Cir. 2006) (internal citation and quotations omitted). In doing so, the court applies a well-established three-part inquiry:

First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a "plan" by inquiring whether from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees.

*Thompson*, 95 F.at 434-35 (cleaned up). The only part in dispute here is the first one – the safe harbor provision – which, to enjoy exemption from ERISA, requires the plan meet all four of the following criteria: (1) the employer makes no contribution to the program; (2) the employee's participation in the program is completely voluntary; (3) the employer's only functions in connection with the program are, without endorsing the program, to permit the insurer to publicize the program to employees, collect premiums through payroll deductions, and remit those premiums to the insurer; and (4) the employer receives no consideration in connection with the program aside from reasonable compensation for administrative services provided through payroll deductions. 29 C.F.R. § 2510.3-1(j)(1)-(4). Plaintiff claims that Unum Life's denial of LTD

5

benefits falls under the safe harbor provision, while Defendants assert that the LTD policy is a component of the group benefit plan to which Cellular Sales contributed—through the Basic Life policy—and that Cellular Sales endorsed the LTD policy, which would mean that the plan fails to meet the first and third criteria of the safe harbor test and is thus within the purview of ERISA.

Defendants rely on the reasoning in *Helfman v. GE Group Life Assurance Co.*, in which the Sixth Circuit determined that an employee who had reimbursed his employer for premiums covering his LTD policy was nonetheless a member of a plan that was subject to ERISA preemption. 573 F.3d 383, 389-92 (6th Cir. 2009). The court reached this conclusion even though other employees in the company had not paid their own premiums for (and the company had therefore contributed to) the LTD policy. *See id.* at 391 ("[W]e hold that if an employer contributes to any employee's payment of premiums, ERISA must apply to the entirety of the particular insurance program, regardless of whether one or more employees pays his own premiums in full."). The Sixth Circuit took great pains to emphasize the importance of the primary policy consideration undergirding ERISA preemption, which is the desire to avoid application of both federal and state regulations to a single employee benefits plan. *See id.* at 390 ("[T]o apply the safe harbor as requested by Helfman would lead to the anomaly that the same plan will be controlled by discrete regimes … To that end, we find that the ERISA policy of uniform regulation dictates a finding that a single plan may not be variously governed by both ERISA and state law, depending on the particular employee in question.").

Plaintiff attempts to distinguish that case from the instant dispute by noting that *Helfman* addressed the reach of ERISA in a situation involving multiple employees enrolled in a single group long-term disability insurance policy, while the current matter concerns Plaintiff's enrollment in four different policies that comprise Cellular Sales' group benefits plan. Plaintiff

6

argues that there is "no … common-sense explanation" for considering the employer-funded Basic Life policy together with the LTD policy for purposes of ERISA (Docket No. 55 at 4), and cites what is purported to be an internal memo from an unspecified "ERISA task force," dated October 2, 1995, included as an exhibit to a filing in a case from a sister district court, *Gillespie v. Paul Revere Life Ins. Co.*, 2021 WL 6333362 (E.D. Tenn. Mar. 25, 2021), in which an individual (whose title is not identified) discusses the benefits of "ERISA protection." (Docket No. 55-2 at 2.)[6] Although no explanation for this attachment is articulated, Plaintiff implies that insurance companies selling employee benefit plans to employers are – or at least were 27 years ago – strategizing to ensure that their policies are governed by ERISA, which ostensibly requires reviewing courts to apply more deferential scrutiny to any administrative decisions made by an insurer regarding an employee's entitlement to benefits.

The Court first notes that a decades-old internal memo from an insurance company with no connection to the current dispute is of little value to the Court's analysis. Even if the memo had been drafted by a representative with Unum Life, it contains no indication of collusion or other intent to engage in illegal activity. To the contrary, the author declares unambiguously that the company should "pay all valid claims and deny invalid claims[.]" (*Id.*) And it is surely no revelation that insurance company representatives would act in a manner favorable to their business model, including by understanding and applying federal regulations in a way that maximizes their bottom line.

Plaintiff makes some headway by emphasizing that, unlike *Helfman*, the current dispute involves an aggregate employee benefits plan consisting of four distinct insurance policies.

---

[6] The decision itself appears to have little relation to the instant case as it involved an employer who had intended to, but ultimately did not, pay an employee's premiums in connection with a single disability insurance policy. *Gillespie*, 2021 WL 6333362, at *1-2.

According to Plaintiff, treating the LTD policy at issue as a single insurance "program" under 29 C.F.R. § 2510.3-1(j) to which Cellular Sales made no contributions would not create the "anomaly" feared by the Supreme Court wherein a single plan is "controlled by discrete regimes." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 17 (2004). Because there is no indication that Cellular Sales paid the premiums for any employee's LTD enrollment, Plaintiff argues that such policies should uniformly be governed by state law and exist beyond the scope of ERISA.

However, the declaration of Mr. Maceiko makes clear that these polices were jointly offered "as part of Cellular Sales' employee benefits package that is available to its employees" (Docket No. 36 at 2), which implicates ERISA regardless of the lack of employer contribution to the LTD portion of the overall plan. The only support Plaintiff provides for his argument is a decision from the Southern District of Texas in which the court concluded that a group accident insurance policy offered but not funded by an employer to its employees was severable from a benefits package that included medical and life insurance benefits funded by the employer. *See Metoyer v. American Int'l Life Assurance Co.*, 296 F. Supp. 2d 745 (S.D. Tex. 2003). Multiple factors make that opinion inapposite, however, one of which is that the employer-funded and employee-funded policies at issue in *Metoyer* were underwritten by different insurance companies, which the court found to represent compelling evidence in favor of severance. *See id.* at 751 ("Unlike the insurance policy that Itochu paid for, which was underwritten by Nippon Life Insurance Company of America, the Policy is underwritten by AIG. This suggests that the AIG-underwritten Policy did not merely provide additional coverage under the same plan paid for in part by Itochu … but was a completely separate policy not part of the employer-sponsored plan."). In contrast, Unum Life underwrote all four of the policies comprising the group benefits plan at

8

Case 3:20-cv-00600   Document 56   Filed 07/18/22   Page 8 of 11 PageID #: 2790

issue here, a feature that courts in this circuit have found dispositive of the issue. *See e.g. Latham v. The Lincoln Nat'l Life Ins. Co.*, 133 F. Supp. 3d 875, 882 (E.D. Ky. 2015) (refusing to sever LTD benefits from overall benefits package in which employer funded basic group life insurance policy and offered an optional LTD policy from the same insurer).

Second, *Metoyer*'s central holding – that LTD benefits represent a different kind of coverage that can be considered apart from life insurance within a single employee benefit plan, 296 F. Supp. 2d at 750 – is a departure from precedent in this circuit. *See Latham*, 133 F. Supp. 3d at 882 ("This Court acts consistently with ... the Sixth Circuit generally in rejecting that approach."). Instead, the Sixth Circuit has joined others in holding that employee-funded disability benefits are not severable from employer-funded insurance plans for purposes of evaluating the applicability of ERISA. *See Blake v. Life Ins. Co. of N. Am.*, No. 3:20-CV-319-DJH-RSE, 2021 WL 4430774, at *3 (W.D. Ky. Sept. 27, 2021) (collecting cases from First, Tenth, and Eleventh Circuits); *see also Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) (holding that because parts of a group benefits plan offered to employees were funded by the employer, the various aspects "ought not be unbundled" for purposes of ERISA). This is particularly true where, as here, the underwriter confirms that the employer actively engaged in selecting both the employer-funded and employee-funded policies that comprise a benefits package. *See Pemberton v. Reliance Standard Life Ins. Co.*, No. CIV.A. 08-86-JBC, 2008 WL 4498811, at *2 (E.D. Ky. Sept. 30, 2008) (holding that an employer "inextricably linked" a voluntary LTD policy to its employer-funded life insurance policy by including the former in negotiations involving the latter).

Finally, the Court notes that while the facts in *Helfman* are distinguishable from the current dispute, cases from this circuit declining to cleave employee-funded policies from an overall benefits plan to which an employer has contributed have explicitly based their decisions on the

9

policy considerations delineated in *Helfman*. *See Blake*, 2021 WL 4430774, at *3 (noting that "district courts have used the reasoning in *Helfman* to find that component policies of an overall benefits plan cannot be considered independent of the plan for safe harbor analysis purposes") (citing cases) (cleaned up). This includes the *Latham* decision, which, after noting the Sixth Circuit's generally "liberal approach" in finding the existence of ERISA preemption, highlighted the importance of reviewing a benefits plan under a single regulatory scheme:

> If this Court were to sever the Lincoln LTD policy from the basic group life insurance policy, it would subject employees to differing legal regimes for their policies from the *same* insurer under coverage negotiated by the *same* employer during a *single* period. Based upon the policy objectives outlined in *Helfman* … the Court declines to do so.

*Latham*, 133 F. Supp. 3d at 882 (emphasis in original). For the same reasons, and because Plaintiff cites no relevant case law suggesting a contrary finding is appropriate, this Court declines to find that Plaintiff's LTD policy is severable from the group benefits plan. Plaintiff has therefore failed to satisfy the first element of the safe harbor framework, and Cellular Sales' funding of Basic Life renders the entire plan subject to ERISA preemption. *See Vasu v. Combi Packaging Sys. LLC*, No. 5:18-CV-1889, 2018 WL 6831175, at *3 n.2 (N.D. Ohio Dec. 28, 2018) (holding that an employer's contribution to basic life insurance, but not voluntary life insurance, as part of a group benefits plan "is enough to nullify application of the safe harbor").

Additionally, the Court finds that the third prong of the safe harbor analysis – that an employer do no more than "publicize" the program, collect premiums, and remit premiums to the insurer, 29 C.F.R. § 2510.3-1(j)(3) – weighs in favor of Defendants' argument for ERISA preemption. Defendants have produced evidence that Cellular Sales applied for coverage through Unum Life, selected the types of coverage that would make up the group benefits plan, and retained the right to "amend, modify, or terminate, in whole or in part, any or all of the provisions" of the

plan. (Docket No. 33 at 126; Docket No. 36 at 6.) Such actions have been held to reflect "endorsement" of a benefits plan. *See Fitzgerald v. Cont'l Assurance Co.*, No. CIV.A. 5:07-413-JMH, 2008 WL 5427635, at *1, 4 (E.D. Ky. Dec. 30, 2008) (employer endorsed employee benefit plan by submitting the application to the insurer and contributing to portions of the plan). Plaintiff does not challenge this evidence at all, instead claiming that "discovery is necessary to establish the employer's functions." (Docket No. 41 at 4.) But an ERISA claimant "ordinarily is not entitled to obtain discovery outside of the administrative record," as discovery is available only in limited circumstances not applicable in this case, such as when a claimant alleges a "violation of due process or bias by the plan administrator." *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 411-12 (W.D. Ky. 2015). The Court concurs, rejects Plaintiff's request for discovery, and concludes that Plaintiff has failed to satisfy the endorsement element of the safe harbor regulatory framework.

For the above reasons, the Court finds that Plaintiff has failed to meet the first and third elements of the safe harbor criteria. Accordingly, Plaintiff's claims for LTD benefits are subject to ERISA preemption and he is not entitled to a trial by jury. *Wilkins*, 150 F.3d at 616.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to strike Plaintiff's request for a jury trial (Docket No. 34) is GRANTED.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge